If it pleases the Court, I would, Your Honor, please like to reserve a couple of minutes for rebuttal. The issue presented to the Court today in the context of a revocation proceeding is whether there was sufficient evidence to revoke. The contention here is that the evidence was insufficient, and there are two components to the claim. The first is a legal one, where we try and extend the corpus delecti rule to the context of these admissions, and say that since there was no physical corroboration of the admissions, therefore they were insufficient. There's a subsidiary argument or an alternative argument that says that even without application of the corpus delecti rule, these admissions were insufficient based on the contextual evidence that we presented at the revocation hearing that said that this particular individual, Mr. Hilger, is highly susceptible to coercive tactics. And I use that phrase, coercive tactics, not in a bad way. I'm just saying that this particular man, given his background, his age, his life experience, his neurological testing, all is recounted by Dr. Bowman Smelko at the hearing, says that he can have an ordinary conversation with an individual and feel that he's being pressured. He wants to change up the answer because he wants to please. I mean, if we could put it in ordinary terms, he's a super people pleaser. Well, I was trying to put this in context. So skipping over the OPR issue and going to what I think you're arguing now is, is there enough evidence? And I saw the judge took a fairly active role in trying to understand what Dr. Smelko was saying as well. One question I have is that Dr. Smelko talks kind of generally about the propensity you just talked about. Is there anything beyond that that would suggest that he made up these stories, which were fairly detailed in there and just the nature of the details was quite minute? Yeah, it's a good question. And I couldn't cite you chapter and verse. I mean, I'm prepared here with some record references in anticipation of questions, but unfortunately that doesn't happen to be one of them. But my memory does tell me that there was some discussion about the intricacies of the proof. And I thought Dr. Smelko, or the stories rather, he addressed that, that there would be no reason why he couldn't, he, Mr. Hilger, confabulate in a detailed way. And I think that that was consistent with the evidence that, or the documentation that Dr. Smelko reviewed. That's my understanding of the proof here. Wasn't he pushed over by the... I'm sorry, Your Honor? I said, didn't the sister testify that he probably would not be able to make this type of story up? Well, I think the probation office took that position. That was the position of the court in the end, and I think at the suggestion of the government. I don't know that Dr. Smelko endorsed that view, Your Honor, in the context of this hearing. No. I thought that the sister, though, had given that testimony, that he couldn't make things up that detailed. So there was some evidence in the record that cut against the theory that he had made it up. Yeah, and that may be true. I think at the close of the hearing the sister did testify, but there I would just use the shorthand phrase, consider the source. I don't think, as between the sister, Your Honor, and Dr. Smelko, that they were in any sort of way competing. I think that that was some kind of lay opinion about her brother. But Dr. Smelko relied, I think, more particularly on the neurological background and his condition, if I can call it that, Mr. Hildreth's condition, and the way that he sees things. He has a tendency to want to please, and he could certainly, I think according to Dr. Smelko, make up stories that had some plausibility to them on a surface level. And that was always the impediment, I think, as far as the probation office was concerned. We don't fault the probation office for the process here and articulated that, I think, at the hearing. But I guess that's kind of a superficial analysis in our view. Dr. Smelko came in and said, this man has a condition and he suffers from mental ailments or impediments that could lead to this conclusion. But didn't Dr. Smelko, he wasn't willing to go all the way and say he is making it up? No, and I think that that, I mean, we all prep witnesses, and I'll be forthright about that. He can't answer that ultimate question. And I think Judge McEwen saying that Judge Lovell played an active role, which often he does, I think that he was trying to get to the nub of it. But I think, in the end, on balance, Dr. Smelko was there to support the proposition that the risk of confabulation here was kind of extreme. This was a fairly unique and extraordinary situation. In all my years of practice, almost 30, I have never hired an expert witness to evaluate somebody or opine in this kind of context on these kinds of issues in a revocation proceeding. It's just not happened. What's the standard we use here, given the findings by Judge Lovell, when we have the very detailed, I don't know if you want to call them confessions, relation of the incidents, we have the testimony you've talked about of Dr. Smelko, we have the answers to Judge Lovell's questions where he was trying to get to the bottom of things. You would like us to reverse. What standard would we use? What would we benchmark that against? Well, I suppose, and I looked at those standards last night, actually, and may have made an error here, but I think that abusive discretion is definitely applicable to the sufficiency claim, and that's what we came here on. As argument time draws near, I, as a lawyer, sometimes can tend to complicate things, but it seems to me that maybe the question of whether or not the corpus electi rule should apply in this context, that's more of a legal question and should be maybe looked at de novo. So that would be my answer to that. I agree on that, if we were to apply that rule, that would be a legal ruling. But if we are just looking at this on the basis of evidence to support the revocation, that's abusive discretion. I believe so. I think I'd have to make that concession, yes. Did you want to save the remaining time? I would appreciate that very much.  May it please the Court. My name is Leif Johnson for the United States. As to the issue of sufficiency, I would just like to remind the Court that Judge Lovell did an excellent job making a record in this case, and I think one of the really compelling parts about that record is not only did he take in the testimony of Dr. Smelko and the sister and the probation officers, but he engaged the defendant at some length about whether or not he had confabulated in these statements, and I think if you read that exchange, it's very telling about how the Court finally concluded that there was a grade A violation here. The Court doesn't specify whether it felt that he committed all of these events, but the Court was clearly, I think, disturbed by the danger that he presents to the community and the fact that even in his exchange with the Court, the defendant sort of admitted that he's dangerous, that he needs help, that he can't control these fantasies. You said it was a grade A violation. What was the violation? It would have been a sexual assault on a minor, Your Honor. So obviously the District Court, we feel, clearly had evidence by a preponderance to find that violation, given what the sisters stated, as you mentioned, Judge McKeown, and given what the probation officers stated, and the fact that Dr. Smelko really only spent a couple of hours with the defendant and didn't conclude that, in fact, this was all confabulation. We're just left, though, with essentially no corroboration other than this bike path existed, right? Yes, Your Honor. But, well, I mean, there is corroboration in the polygraph, obviously, because he was asked in the polygraph whether he'd had unauthorized contact with children, and that is what gave rise to all of these admissions. So that would certainly tend to corroborate. The circumstances of the scene that he describes is corroborative, and clearly I think an important corroborative factor here is the exchange between the defendant and the judge. So if we're under abusive discretion standard, would we need to conclude that the District Court's determination that there was sufficient evidence was illogical, implausible, or without support in the record? Is that the standard we're applying here? Yes, Your Honor. We believe from the Hinkson case that you would have to basically look at the record as a whole and decide that there's really no support for the judge to conclude that a Grade A violation occurred here. And we believe that there was at least evidence by preponderance that that, in fact, occurred because of the admissions themselves. And the fact that the defendants didn't disavow of those admissions was not credible. So our position, Your Honor, is those admissions should come in and should be relied upon, and the defendant should have every opportunity to explain them in a way which he had here. And I'd like to turn briefly to this corpus delecta issue. I know it's set out pretty well in our briefs, but I just wanted to point out that that's a rule of formal evidentiary exclusion from the criminal prosecution. There is no authority whatsoever for applying it in this type of informal revocation process. There's always a first. That's how precedent gets made. There's always a first. But I wanted to point out a couple of, I think, problems with that. I mean, you kind of have to step back and ask yourself, well, what are they asking? Are they asking that, like in a criminal prosecution, the judge wouldn't even be able to consider this evidence? Because it's clearly relevant evidence. I mean, even if we assume that the defendant did not assault these young girls, the fact that he's making up these stories and fantasizing about it is clearly relevant to the court's duties here in sort of assessing whether he is rehabilitating, assessing whether he can reintegrate. These are important parts of the revocation process that are not a part of a formal criminal prosecution. You're not suggesting if the judge thought that these things hadn't actually occurred, but they were just fantasies in his head that he would revoke, would you? I'm suggesting that that would be relevant to the court's inquiry. But it wouldn't be sufficient. No. He was going to be revoked in any event, Your Honor. I mean, either he lied to the court or he committed these assaults, and he's going to be revoked in either event. And, of course, he's no longer in compliance with his treatment. So in any event here, he's going to be subject to revocation. But not a Grade A violation. Exactly, Your Honor. But the corpus delecti rule as a formal rule of exclusion has never been used to sort of limit the court's sentencing discretion in this fashion. I mean, once he has breached the court's trust, the question then becomes, well, how serious is it? And the court should be free to consider all of the evidence to fully assess whether or not he's really a danger to society and whether or not he's going to be a successful candidate for reintegrating in the community. That's the question. And that's simply a bigger question than the one that would be posed before a jury at trial. And finally, I wanted to point out for the court, we think that the state courts that have actually addressed this issue have done a good job of analyzing the impediments for imposing this type of formalistic rule in a revocation setting, and that is the burden's different, obviously. Preponderance at trial, and I think it was the New Mexico court in the Sanchez case described this very well. You know, at trial, it's simply not enough to prove beyond a reasonable doubt a crime with an uncorroborated confession. At revocation, it may be, and that's simply the differing burdens. Secondly, obviously, the defendant in a revocation setting has a very limited due process right, and there is no issue here that the defendant didn't receive his full due process rights. I mean, he had his hearing. He had an opportunity to contest the evidence. He had an opportunity to cross-examine, and he had an opportunity to present his side of the story about these admissions, and that's very important here because I think really when you boil it all down, he's saying I should get more sort of procedural protection in this revocation process than the Supreme Court said he's due in the Morrissey v. Brewer case. And finally, Your Honors, I would just like to say that to sort of bring it all around, is that the district court here did an excellent job of creating a record. It's very thorough. The court was obviously, I think, pained by the difficulty here that this case presents. This is a 58-year-old sex offender. He's a man who functions in many respects like a young person. He obviously associates with young girls. He fantasizes about young girls, and he's got problems dealing with that part of reintegrating into society. The court was, by its comments, very troubled by this, and I think it fashioned a solution that didn't really hinge upon whether there was a Grade A violation at all. I mean, I think at the end of the day, the court gave the full 24-month sentence because it was really troubled by the prospect of the danger to the community that this person presents if he's out there and has access to young children without some sort of supervision. And I think on that basis alone, there was ample evidence to support what the court ended up doing in this case, whether or not there was a Grade A violation, and we believe that that record should remain undisturbed. If the court has no other questions. Thank you. Thank you. I don't think I'll take the full two minutes, but just a couple things. First, there's a difference between relevance and probity. I'm not saying that the statements that were made to the probation officers weren't relevant. Certainly, they were something probably that needed to be reported to the court. But when you get down to cases, I mean, you have to have proof. There's nothing in OPER that says, and we indicated this in the briefing, that that rule is confined to the criminal trial process. There's no reason why it couldn't be extended. And there's some interesting questions, subsidiary questions, that surround that. What is the nature of the supervised release revocation proceeding now? Is it an articulation of new criminal conduct by way of proof, or is it just this breach of trust? And that issue surfaces in the briefing here. The Sixth Circuit says it's new criminal conduct, so why wouldn't that rule extend? When you think of the limitations on the supervised release proceeding under Morrissey v. Brewer,  there were no Miranda warnings that needed to be given in the context of that meeting under this Court's precedent with the probation office. There was no custodial interrogation. All of those things sort of go by the wayside. But this particular rule could serve, in the unique circumstances of this case and others that may follow, to put a caution there and say, look, we have to have some physical evidence of a crime if that's what the allegation is. If there is no physical evidence, the statements are just going to be insufficient. Thank you. Thank you. The case just argued, United States v. Hilger, is submitted. I'd like to thank both counsel for their argument this morning and for coming from Montana. The next case for argument, United States v. Brecke. Good morning, Your Honors. Good morning. May it please the Court, I'm Marla Zell.
judges: Carney, McKeown, Ikuta